368

SECURITY TRUST COMPANY, a corporation of the State of Delaware, and SAMUEL COOLING, surviving executors under the will of Severson B. Cooling, (Sr.), deceased,

*vs.*

SAMUEL COOLING and SECURITY TRUST COMPANY, a corporation of the State of Delaware, surviving executors under the will of Agnes S. Cooling, deceased; SAMUEL COOLING and SECURITY TRUST COMPANY, a corporation of the State of Delaware, executors under the will of Severson B. Cooling, Jr.; SECURITY TRUST COMPANY, a corporation of the State of Delaware, trustee under Items Sixth, Seventh, Eighth and Ninth, respectively, of the will of Severson B. Cooling (Sr.), deceased; SEVERSON B. COOLING, 3d, a minor; ALICE BALL COOLING, a minor; MARJORIE ANN COOLING, a minor; and EMILY R. COOLING.

*New Castle, November 12, 1942.*

*Harold B. Howard,* for complainants.

*Benjamin N. Brown,* for Samuel Cooling and another.

*W. Reese Hitchens,* of the firm of Hering, Morris & James, for Security Trust Co., executor.

*W. W. Knowles,* of the firm of Knowles & Knowles, for Emily R. Cooling.

*W. Thomas Knowles,* of the firm of Knowles & Knowles, for Emily R. Cooling, guardian *ad litem.*

*Charles F. Richards,* of the firm of Richards, Layton & Finger, for Security Trust Co.

THE CHANCELLOR: The complainants, as surviving executors, seek instructions with respect to the proper settlement of the estate of Severson B. Cooling, Sr., deceased; no relief, whatever, is sought against any of the defendants.

They are made parties in order to bind them by any decree that may be ultimately entered by this court.

Mr. Cooling died May 24th, 1931, a resident of the City of Wilmington, and left a considerable estate consisting of both personal and real property. On December 11th, 1929, he executed his last will and testament, which was subsequently proved as such before the Register of Wills for New Castle County. Letters testamentary were thereupon duly issued to Samuel Cooling, Severson B. Cooling, Jr., and Security Trust Company, the executors named in the will; Severson B. Cooling, Jr., has since died.

A copy of the will of Severson B. Cooling, Sr., is attached to the complainants' bill, but, at this stage of the case, it seems unnecessary to set out its provisions. By that instrument, Mr. Cooling purported to bequeath $380,000 in pecuniary legacies, all but $30,000 of which was bequeathed to the Security Trust Company in trust for various members of his family for life, or otherwise.

The bill alleges that the personal property of the deceased received by the complainants, is wholly insufficient to pay these legacies.

The complainants seek instructions with respect to the following questions:

(1) The devolution of the real estate of the deceased under his will, and of the income received therefrom since his death; whether their disposition is governed by the residuary clause of Mr. Cooling's will, or whether the pecuniary legacies should also be paid, in part, therefrom.

(2) Whether all of the pecuniary legacies, in trust, or otherwise, abate; whether, under the language of the will, there should be any deduction from the $300,000 legacy in trust.

(3) The effect of the rule against perpetuities on the legacy of $300,000, primarily in trust for the benefit of

Agnes S. Cooling, widow of the deceased, for life, who has since died; the parties now entitled to the income therefrom for life, and their proportionate shares.

(4)    The effect of the rule against perpetuities upon the gifts in trust under the residuary clause of the will.

(5)    What portions of the three several legacies of $10,000 should be paid, and to whom?

The bill further prayed

"That this * * * court approve and confirm all payments of income heretofore made to beneficiaries under said will, or, in the alternative, instruct your complainants whether any payments should be made on account of equitable income to said beneficiaries from the principal of said estate, the amounts thereof and the persons entitled thereto."

These prayers are consistent with the various allegations of the bill.

A consolidated analysis of the first and second accounts of the executors of Severson B. Cooling, Sr., passed before the Register of Wills, for New Castle County, on October 20th, 1939, and June 20th, 1941, respectively, is also attached to the complainants' bill.    It appears therefrom that the appraised value of the personal property of the deceased, received by the complainants as executors, was $388,812.33; the net gain on certain securities sold, together with the subsequent receipt of other credits, including the value of securities received from the Newark Securities Company, increased that figure to $432,778.53; but the payment of taxes, debts and expenses, and the payment of legacies, either in full or on account, reduced that amount to $276,-201.79.    The balance due on the pecuniary legacies, which the testator purported to bequeath by his will, appeared to be $364,863.00.    The income received by the complainants as executors, from the personal property belonging to the decedent's estate, was $147,141.53; the payments made therefrom by the complainants include $92,101.32 to persons entitled to the income under the various trust provisions of

the will; the balance in hand is $13,126.70. At the time of Mr. Cooling's death, his real estate was valued at $52,170. Under the residuary clause of his will, it was devised to the Security Trust Company in trust, with power of sale. One parcel was subsequently sold at a figure $100 under its appraised value. The net income received from the real estate was $14,852.08. As of June 20th, 1941, it, therefore, appears that the complainants, as executors, had in hand personal property of the apparent value of $276,201.79, the balance of the net income received therefrom amounting to $13,126.70, and the net balance of the income received from real estate, amounting to $14,852.09; this makes a total figure of $304,180.58. The balance of the real estate was also originally valued at $52,070; if this property and the income therefrom is applicable to the payment of legacies, the gross estate, under the jurisdiction of the complainants, would appear to be $356,250.58.

But due to shrinkages, since the death of Mr. Cooling, in the market value of securities owned by his estate, the present total value of the personal property in the hands of the executors, including the income received from all sources, is alleged to be approximately $270,000. The value of the remaining real estate is also alleged to be somewhat less than its original appraisal. Moreover, whether that property and the income received therefrom is applicable to the payment of legacies is one of the questions raised.

The bill further alleged that the executors had been unable to make a final accounting before the Register of Wills because of some pending litigation, wherein it was expected that some additional assets might be ultimately recovered.

It appears, however, that with the instructions of this court as to the mode of distribution, the executors are prepared to distribute the assets in hand, subject to the deduction of such administration and other expenses as may be proper.

Pursuant to the directions of an instrument attached

to the bill, signed by Agnes S. Cooling, widow of the testator, and by Samuel Cooling, one of his sons, it appears that a legacy of $10,000 to Severson B. Cooling, Jr., was paid in full during his lifetime. The responsibility for that payment was assumed by these parties. Certain questions relating to that payment are involved.

At this stage of the case, the sole question for determination is whether the issues raised by the cross-bill can be litigated in that manner. Primarily, its apparent theory is that, since the death of Mr. Cooling in 1931, the Security Trust Company, the trustee ultimately entitled to a considerable portion of his estate, has negligently permitted the complainants, his executors, to dissipate it in various ways. Acts, both of commission and of omission, are alleged to have been permitted by the trustee. Perhaps, for the most part, they consist in the payment of certain large debts, originally created by Mr. Cooling, and others, in his lifetime, and primarily for the benefit of the Newark Securities Company, of which he was one of five stockholders. That corporation was dissolved in 1934, and its assets were distributed among three of its stockholders, or to their personal representatives, including the executors of Mr. Cooling's estate, who seem to have paid a corresponding portion of its debts. Such debts were secured by notes, given by the five stockholders, and by collateral belonging to some of them. It is unnecessary to consider the reasons for the particular distribution of assets and the manner in which the debts created were paid.

The position of the cross-complainant seems to be that the original proceeding should be stayed until the questions raised by the cross-bill are determined; and that if the dissipated assets are replaced, there will be no occasion for some of the instructions sought by the executors.

In addition to prayers that action on the original bill be delayed; that an accounting be made by the Security Trust Company, as trustee; that books be produced, and that a master be appointed, the cross-bill seeks to hold the

trustee responsible for its alleged neglect of duty.

The issues raised by the cross-bill must be germane to the subject-matter of the original bill; in some way auxiliary to and dependent upon it. *Allied Chemical & Dye Corp. v. Steel & Tube Co.,* 14 *Del. Ch.* 368, 127 *A.* 414; *Ross v. Freeman,* 21 *Del. Ch.* 44, 180 *A.* 527; *Story's Eq. Pl.,* § 389; 30 *C. J. S., Equity,* § 384, *p.* 796. It should not introduce new and distinct matters, not within the scope of the original suit, and in no way necessary for its complete determination. *Allied Chemical & Dye Corp. v. Steel & Tube Co., supra; Field v. Schieffelin,* 7 *Johns. Ch.* 250; *Story's Eq. Pl.,* §§ 389, 401; 5 *Encyl. Pl. & Pr.,* 628, 640, 641. When new and distinct matters are alleged, what may be termed a cross-bill is but an original bill. *Allied Chemical & Dye Corp. v. Steel & Tube Co., supra; Story's Eq. Pl.,* §§ 389, 401. A cross-bill may be often filed when the relief asked for by the original bill cannot be completely given without the determination of some alleged conflicting rights between co-defendants, relating to the same matter. *Field v. Schieffelin, supra; Langdell's Eq. Pl.,* § 158; *Story's Eq. Pl.,* §§ 389, 392; 30 *C. J. S., Equity,* § 384, *p.* 796. But the new facts alleged must be such, and only such, as are fairly necessary for the court to have before it in determining the questions raised by the original bill, in order to do full and complete justice between all parties. *Langdell's Eq. Pl.,* § 158; 5 *Encyl. Pl. & Pr.,* 641; 30 *C. J. S., Equity,* § 384, *p.* 796. The cross-bill, sought to be filed by the guardian *ad litem,* does not comply with these rules. A claim for negligence, primarily against a co-defendant, has no reasonable connection with a bill filed by the executors, merely seeking instructions with respect to the settlement of the Cooling estate, and, whatever its merits may be, cannot be litigated by a cross-bill.

Other contentions were made, but need not be considered.

Permission to file the cross-bill is denied; an order will be entered accordingly.